Thanks to both parties. I should just mention that after this second case we will be taking a 10-minute break. And our second case of the day is Darnell Dixon v. Terry Williams. It is appeal number 21-1375. And Mr. Fitzgerald. Good morning. Good morning. May it please the court. From the beginning the state's prosecution of Mr. Darnell Dixon was fundamentally flawed because of Detective Michael McDermott. He was not known at the time of Mr. Dixon's trial. But it is known now that Michael McDermott made a career of coercing confessions, torturing criminal suspects, and perjuring himself about those false confessions and the means by which he coerced them. You know, there really are a number of hurdles that you're going to have to jump over in this case. But perhaps the first is whether there really is a cognizable claim for actual innocence on habeas truth. There's not a lot of support in the case law. So what do you think is your best argument? Your Honor, I think our best argument would be the Eighth Amendment, that it's cruel and unusual punishment to incarcerate a person after a compelling showing of actual innocence. I think another good argument is the Due Process Clause, that it is arbitrary action by the state that would shock the conscience of any onlooker if the state continued to incarcerate someone after a persuasive showing of actual innocence. We do recognize that there is no case that has already found a freestanding actual innocence claim, but there are cases by the U.S. Supreme Court and by several circuits that assume without deciding that one might exist. Mr. Fitzgerald, if we disagree and we don't find an actual innocence stand-alone claim, but we think that there is basis for especially the Confrontation Clause claim, can you address the fact that a conclusion could be reached that it was waived or forfeited, and also that it's beyond the certificate of appealability? Do those present the hurdles that Judge Rovner has referenced to hearing that Confrontation Clause claim or not? Your Honor, those hurdles don't prevent this Court from reaching the merits. First, with regard to waiver, we stated in our opening brief that we would consider this issue forfeited, not waived, and the state didn't disagree. In the response brief, they assumed as well that it's forfeited. And this Court has discretion to entertain, reach the merits of forfeited claims, and we would ask that the Court do so here. And you cite Bailey. Unpack that for us. Why should we take that step here to overlook a waiver or forfeiture to get to the Confrontation Clause claim? The Court's reduced it here for a series of reasons. First, it's a truly exceptional case. There was a finding below of actual innocence. The District Court made that finding at multiple stages in the litigation and stood by it. It's also a question of law. The Confrontation Clause issue doesn't raise any questions of fact. And the Confrontation Clause issue, that portion of the trial, it was an egregious error by the trial court. As egregious as it was, it's never been raised in the state courts with multiple proceedings. And as I understand it, there is a petition pending in the state courts now. You're right, Your Honor. There is a petition pending in the state courts. It does not raise that Confrontation Clause issue. And you're right, this is the first time it's been presented as a Confrontation Clause issue. But the factual... You're asking us to take an extraordinary step in a habeas case like that, to take an issue that's never been presented to the state courts. Well, Your Honor, I disagree. I understand that it would be an extraordinary step in principle, but this factual scenario, this portion of the trial, has been litigated in the state courts. It just hasn't been packaged as a Confrontation Clause issue. It's been raised below... It's been raised in the district court as a prosecutorial misconduct issue. It was raised in the state courts as an ineffective assistance issue. So these facts have been considered by the state courts, but it hasn't been packaged this way. Well, you talk about the standard is fair presentment. And what you're arguing in essence is that we should step in, sweep away the state court judgment on grounds that no lawyer ever raised in the state courts on the theory that the state courts should have recognized the Confrontation Clause violation? Your Honor, not so much that the state courts should have recognized the Confrontation Clause violation. I would instead first argue that as these issues were litigated in the state courts, the state was making material misrepresentations in their briefs. So it wasn't litigated adequately or fairly in the state courts. And you're referring to the... Is it Mr. Chandler's identification? No, the argument by the state in the state courts that Eugene Langston had nothing to do with the court, as it appears in their opinion, seems to accept that statement. As they applied Strickland, they said that it didn't matter for the state to put Eugene Langston at the scene of the crime, which is obviously false. So these claims weren't adequately litigated in the state court. And so I understand that as a principle in habeas, it would be an extraordinary step. I think this is the case that warrants that extraordinary step. You know, I think that part of the trouble that I would have with the actual innocence claim is that two things could be true here. Dixon could have committed the crime and McDermott and Simmons could be lying that he confessed. In other words, even if we could know for certain that they made up his confession, would that be evidence of actual innocence? Your Honor, it could be. I think if you accept that as true, if we accept that it's true that Dixon could have committed these crimes and that the state falsified the confessions. First of all, to know if that really even could be true, we would need to understand what steps the state made in falsifying these confessions and where they got the information that they put in there. And that could really only be understood if this case is remanded for an evidentiary hearing on the actual innocence claim and Mr. Dixon's afforded the ability to examine McDermott, knowing what we know now, to examine Simmons, knowing what we know now, and to understand if it were the case that they were going to admit that they falsified this confession, we would need to understand what steps they took. We would need to understand what in the written confession, as they call it, comes from Marshawn Allen, what comes from their imaginations, what comes from evidence that they already had, such as the van, in their own possession. I wouldn't say that just because, in theory, both could be true. I don't think that closes the door on the actual innocence claim. It certainly, I don't think, closes the door on the procedural actual innocence showing. So you just talked about Marshawn Allen, which, you know, of course, he gave these to the press. Would those interviews be evidence that a court could consider in an actual innocence claim, do you think? Your Honor, to directly answer your question, yes. The standard for the actual innocence review takes into account everything. So this court could consider that evidence, but this court should give that very little probative evidence. Marshawn Allen was released from prison because he was a minor at the time, and he's made, for himself, a sort of career after prison as someone who's turned his life around. So the motivations for those interviews would need to be understood in an evidentiary hearing. And furthermore, it's unclear from the interviews what Marshawn Allen specifically said, what the interview consisted of in its entirety. We only get the snippets that the journalists thought was the most interesting and fit the narrative. So to take those media interviews and use them as evidence without understanding more of the context, I think the probative value is extremely low. If I could turn back to your question, Judge Brennan, about the certificate of appealability, I also think that should not prevent this court from reaching the merits of this claim for a couple of reasons. I think the first one, perhaps the most strongest, is that Peterson v. Duma, the case that says that this court under special circumstances can, well, I guess taking it back a step first, the certificate of appealability in this case is very broad and it's vague. It's all issues presented. Presented? You seem to be arguing in your brief that it means it was an invitation to raise entirely new issues. Sort of as I was saying before, this factual scenario of the trial was discussed below. It was the judge, it was the district court who asked counsel to file an amended petition and include a prosecutorial misconduct claim based on Friel's testimony, hearsay testimony. So this factual issue concerned the court, it jumped off the page to the court, and the court identified it as a prosecutorial misconduct issue. We've raised this issue on appeal, but we've repackaged it as a confrontation clause and ineffective assistance issue. So at first we understood the conflict. I'm trying to imagine, frankly, a discussion with the Supreme Court about habeas cases in which such claims are repackaged, right, given all that we've been told about respect for state courts and the limited role of habeas. If this court is not convinced that the broadly written certificate encompasses these claims, this case presents special difficulties in expanding the certificate at this stage of the litigation. First, under Peterson, it's at least arguable that the certificate was not clear about which claims were presented on appeal or certified for appeal, and this court shouldn't hold that against Mr. Dixon. Secondly, the case that we alerted this court to in our Rule 26 letter, Hemphill v. New York, made it more clear after we had filed their opening brief, the strength of these claims, the confrontation clause and ineffective assistance claim, it was clearer at that stage. So under Peterson, under Moreland, we would argue that that's another reason to expand the certificate at this stage, which this court has the authority to do. And finally, we would ask this court to find that a special circumstance exists where the district court finds the procedural actual innocence showing has been made. Cases like this are extremely rare. It almost never happens. So it is a special circumstance when it does happen. The idea of the actual innocence gateway is to lower the barrier that procedure might have in a typical case, and likewise, it should lower the barrier of the procedural hurdle that the certificate of appealability presents. So it should be understood as a special circumstance. Finally, other circuits who have encountered vague or overbroad or ambiguous certificates of appealability have interpreted them in favor of the petitioner. And like I said before, this court shouldn't hold it against Darnell Dixon that the district court wrote a certificate of appealability that didn't specify specifically the issues that were certified for appeal. I would ask this court that I reserve the balance of my time for a moment. Of course. Thank you very much. Okay. Mr. Malamuth. Good morning, Mr. Malamuth. Good morning. Good morning, Your Honors, and may it please the courts. I am Assistant Attorney General Eldon Malamuth on behalf of Respondent. This court should affirm the judgment of the district court for a number of reasons. First, as discussed, there is no recognized freestanding actual innocence claim. Second, petitioner has failed to meet the actual innocence standard even as a procedural matter. You think the district court was wrong about that? Yes, Your Honor. The district court was wrong in the first instance, but subsequently the district court also held an evidentiary hearing which undermined two of the three pillars on which it based that finding. Should you have filed a cross appeal to make that challenge? No, Your Honor. We're not challenging the judgment and we're not trying to enlarge our own position. And this court can recognize any basis for affirmance in the record. We don't have to have to file a cross appeal on that basis. You are trying to, however, decrease Mr. Dixon's position? No, Your Honor. He was denied habeas relief and that's the position that we are we are simply seeking to enforce that judgment. You know, the trial court denied Dixon's motion to suppress his post-arrest statement citing McDermott's testimony. Do you think that motion would have come out differently if the trial court had the information we have now about McDermott? Well, I don't know, Your Honor. First of all, that's an unknowable issue right now, how it would have reacted regarding Mr. McDermott. But second, it's actually an almost irrelevant matter because of the statement from Mr. Simmons. So Petitioner wants to focus on Mr. McDermott for obvious reasons, but there's a separate statement that Petitioner made to Henry Simmons, and that would have been before the trial courts, and that would provide a basis for conviction. And in fact, it defeats the actual innocence claim. But Dixon refused to sign the confession. And from the very start, he has asserted that he didn't make the statements that Simmons wrote down. Well, Your Honor, first of all, You're claiming there's no evidence that McDermott and Simmons committed in this conduct in this case, even if, you know, there are claims in other cases, but he's, you know, from the get go. He, I mean, wouldn't that be evidence of misconduct in this case if indeed he refused to sign the confession because of this? Well, Your Honor, the question for actual innocence is whether any reasonable juror could convict based on this new reliable evidence. We would not be able to convict. So Mr. Simmons is a, as Petitioner concedes, is a well-respected member of the community. And in fact, he was a circuit court judge. He's the managing partner of a prominent law firm now. We've read the briefs. Yeah, so Your Honor would have to find that no reasonable juror could convict to establish actual innocence, even as a procedural matter. Your Honor would have to find that no reasonable juror could believe Mr. Simmons, who testified that Petitioner orally confessed to him, gave him an oral statement of the murders, then agreed that it would be reduced to writing, then initialed changes to that statement, and then, it's true, refused to sign it. But he would, he still testified that he heard this oral confession. That's admissible. And that's certainly considered in the actual innocence standard in the inquiry. And this court would have to consider it. Now, and that's, so we have Mr. Simmons' testimony. Now, two of the other things that the district court based its finding was the fact that charges had been dropped against a co-defendant, Eugene Langston. But after the evidentiary hearing, the district court found as a factual matter that the only reason those charges were dropped was because there was insufficient evidence to go forward. It had nothing to do with any belief that Eugene Langston wasn't one of the co-offenders. So using that as a pillar has now been essentially removed. The other was this line or paragraph in a post-conviction appellate brief, which was responding to an ineffective assistance of counsel argument with respect to opening the door to testimony that a witness, Horace Chandler, had seen Langston leave the site, the building. And after the evidentiary hearing, the judge found, the district court found that this was simply an inarticulately worded paragraph. It didn't reflect any view that Mr. Langston had nothing to do with the murders. And so essentially removed two of those pillars from the judge's, the district court's findings. And all we have left is this impeachment evidence against McDermott, which is substantial, and then against Simmons, which is insubstantial. And virtually no other substantive evidence of Mr. Dixon's guilt, correct? No, we have, well, no substantive evidence of his innocence. We actually have substance. I'm talking, the analysis that Judge Gettleman went through, we've got two separate questions. We both call them both actual innocence, right? But for the procedural actual innocence, the question is, in essence, could you convict him, right? Correct. And apart from this supposed oral confession, what else is there? Well, we have the oral confession by, again, and- I just asked you in addition to that. I apologize, Your Honor. We have Marshawn Allen has testified under oath at his trial that he committed the crimes along with his two co-defendants. This was in evidence. This was responded to at 12 at the district court evidentiary hearing and was discussed by the prosecutor there. So we have Marshawn Allen's- Is that testimony available to the state if there were to be a new trial? Well, it might. So we have, I'm sorry if I misunderstood. We're talking with the actual innocence standard because that is admissible. We're talking about the procedural bypassing of the procedural obstacles. Yes, Your Honor. That would be available. That would be available. As indeed are the multiple interviews that he has given since in which he has continued to state that he was responsible along with his co-defendants for the murders of the victims in this case. And so we would have that. So we have the state- Additionally, we have corroborative evidence from the fact that a van was stolen, reported stolen from the place that the statements indicated the van had been stolen from and dropped off in the place which the statements indicated the van had been dropped off at. We have phone calls made from the home of the Allens, which include Marshawn Allen, to the victims' apartments. And we have the testimony of Myron Gaston, which was in the record in which he testified that Petitioner was at the scene of the burglary, which was the inciting event that led to the retribution, which was the murders. So we have a whole host of- But Petitioner has never denied that. No, exactly. That's more corroboration. Petitioner concedes that he was at the scene of the robbery, which led to the retribution. He concedes that he had been a part of the drug dealing operation. He denies at that particular point that he was involved, but he does concede that he was a part of the drug dealing operation at some point and was at the scene of the burglary. And all this, again, goes to why Petitioner cannot demonstrate actual innocence, even under the procedural standard. And as Your Honors discussed, there are these additional procedural hurdles preventing habeas relief, which are the fact that he, that Petitioner, failed to raise these claims in the case. And because they're not under the, also under the purview of the Certificate of Appealability, this court has- If we're troubled, though, if we're troubled by the imbalance in Detective Friel's testimony by the State Trial Court Judge, what is your argument for us not to find this to be extraordinary? If the theory of liability for purposes of the conviction is as narrow as it is, and the, this type of evidence is going to go directly to that theory, what's your argument as to why this is not extraordinary? Well, it's not extraordinary for a number of reasons, and I hope I'm understanding your question properly. One, defendant was represented below. He was represented here. He has never proceeded with the steps that would raise that claim. And he has never made it to raise that claim in the District Court or to make it a part of the Certificate of Appealability. And as Petitioner even noted, not only did the, was he counseled, ably counseled below, but the judge, the District Court judge looked at the facts and asked the parties to brief an additional issue, this prosecutorial misconduct claim. So not only has, have able attorneys looked at this in both state and federal courts, but the judge, the District Court judge looked at these facts and didn't raise this claim. And so it's not extraordinary in that sense. It's also not extraordinary in the sense because Petitioner, again, hasn't met the standard for procedural actual innocence. If there were, if we thought we should over, should get past the procedural obstacles to this Confrontation Clause claim, what's the, what's the defense for this extraordinary approach that says, we'll, we'll let you put in one hearsay statement, but not the other? Well, Your Honor, this was a matter that was involved in extensive litigation at the, the state court trial in the sense that... I understand. This whole issue had been... But, but how do you, how do you, how does a judge let the prosecution put in the identification, but not the recantation? Well, Your Honor, it's, it's important to remember that the judge was, allowed the, the Petitioner to strike the testimony, to not have the testimony occur at all. He offered, he offered the option, but a trial lawyer might well think there's not much use in that given that the jury's going to have trouble. That would be all the more benefit to the, because it was the District Court that the, that option to strike was made after that Detective Friel simply testified that... So, so the whole issue was that Petitioner wanted to put Detective Friel on, or to get some, someone to testify that there had been this lineup and that no one had identified, and that, that Chandler had not identified Petitioner. Right. He had identified Langston. Now, so Petitioner kept trying to do this in the trial, kept trying to do it in various ways. Finally, he calls Detective Friel. Detective, he asks him essentially two questions. Was there a lineup? And did, did, did Mr. Chandler identify, did Mr. Chandler identify my client, Petitioner? Answer is no. Okay, I'm done, he says. Then sidebar, the sidebar occurs, and at that point, that's when the District, the State Trial Court Judge permits, gives the, gives Petitioner the option. You're skipping the step, though, that the judge had said, don't get into this area. Right. Well, yeah, yes. I apologize. You're, you're right on it, Your Honor. And this had been going on throughout the trial in a whole, a number of avenues that was, this, this had occurred. And at that point, he could have said, the judge still gave Petitioner the option to strike the testimony. And at that point, he would have had the best of all worlds. He could have had this attorney might think, okay, we can strike it, but the jury still heard it. And he, and he decided not to. I mean, there's a whole other possible defenses that could have been raised in terms of the availability of Chandler to testify. I mean, that's part of the problem is that there's a whole range of possible defenses that might have been raised if this claim had ever, ever been raised in state court, in federal court, and it hadn't. Pretty, pretty good and effective assistance of counsel claim, don't you think? Well, Your Honor, I, I wouldn't, I wouldn't give my opinion on the merits of such a claim. And we, it's another reason. Well, I'm giving your opinion on everything else here. But that's another reason why, again, the procedural, procedural stuff matters, because if this claim, for instance, ineffective assistance of counsel claim had been raised in the district court, perhaps there could, that could have been part of the evidentiary hearing. And no, there's been no questioning of the trial attorney as to his strategic decisions. I see that I've run out of time. Unless there are any further questions from the court, we would ask. Yeah, I think it's time for that to occur. We would ask the court to affirm the judgment of the district court. Thank you. All right. Thanks. Okay. Mr. Fitzgerald. Go ahead. I just want to address a couple of points that counsel pointed out. First, with regard to the motion to suppress and your question, Judge Rovner, I think it's almost certain that with the supplemented record, the motion to suppress would have been granted given what we know today. I also want to point out that counsel talks a lot about the importance of Simmons' testimony at trial, but with the actual innocent standard, Simmons' testimony at trial isn't taken in a vacuum. The supplemented record includes McDermott's misconduct. So it's not enough to just strike out what McDermott said at trial and assume that the trial happened, but McDermott didn't exist. We have to take into account what a juror would think if they knew what we now know about McDermott. And that casts a dark shadow on Simmons' testimony, especially because, based on the torture inquiry report, Mr. McDermott's practice included working with ASAs and getting false confessions with ASAs. It's the Alfonso Penex case specifically. Finally, with regard to actual innocence, as we pointed out with our brief, and I won't just repeat here, all of the corroborative evidence that the state talks about is really, really thin. The probative value is really thin. So I want to turn now to the confrontation clause and ineffective assistance claim. It's important for this court to recognize that the state doesn't have any defense for the confrontation clause issue on the merits, not in the briefs, not here at oral argument. The counsel has nothing to say about the ineffective assistance claim in the briefs or oral argument. And to the extent that this court isn't convinced that it can and should overlook forfeiture and expand the Certificate of Appealability, it should remand to the district court so that the district court can clarify the Certificate of Appealability, clarify what is certified for appeal. Because as the district court said when it issued the Certificate of Appealability, this case is disturbing. It's disturbing, it's complex, and it was difficult to litigate below. There's reason to believe that the district court would certify these issues and it should be I realized that, of course, there was a life sentence here. Is there any expectation at this point that Mr. Dixon will ever be released or is there no parole? No, Your Honor. It was a life sentence without the possibility of parole. So we ask that this court issue, reverse the district court and issue the red for Mr. Donald Dixon. Thank you. Mr. Fitzgerald, don't go away quite yet because we want to thank you. You were appointed by the court and you did such a fine job for your client and you have the deepest thanks of the court for taking this difficult, complicated case on. Thank you so much. And of course, Mr. Malamuth, wherever you may be, we thank you. He's out of camera range. Thank you. We thank you, too, for the job that the attorney general's office has done. And the case, of course, we take him under advisement. We're going to take 10 minutes right now, so you can run amok, all of you out there, if you wish. Okay.